UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DUANE CAMERON,<br>    Plaintiff,<br>        v.<br>SUN LIFE ASSURANCE COMPANY,<br>    Defendant. | Case No. 2:21-CV-02092-JLS-AFM<br><br>**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS** |

This matter is before the Court on Plaintiff's Motion for Attorneys' Fees (ECF 100). The matter is fully briefed. (ECF 103 (Opp) & 104 (Reply).) The Court vacated the hearing set in this matter (ECF 105). As set forth herein, the Court, having considered the briefing, the declarations and exhibits offered by the parties, and the record, GRANTS IN PART Plaintiff's Motion. The Court awards $530,863.25 in attorney fees and $5,210.98 in costs to Plaintiff.

**I.    BACKGROUND**

Plaintiff filed a claim for long-term benefits under an ERISA Plan, which was denied by the administrator. Although Plaintiff argued he was entitled to benefits for a much longer time period, the Court, on administrative review, held that Plaintiff had established entitlement to benefits under the Plan for the time period August 22, 2019 through January 29, 2020. (*See generally* ECF 58 (Findings of Fact and Conclusions of Law Re: Cross

Motions for Judgment ("Order awarding benefits")).)  Thereafter, judgment was entered (ECF 62), and Plaintiff appealed (ECF 65).

The Ninth Circuit held that the Court erred in determining that Plaintiff's entitlement to benefits ended on January 29, 2020.  (*See* ECF 78 (Mem. Disp.).)  Key to its determination was the fact that five weeks after this date, on March 10, 2020, Plaintiff experienced a cardiac emergency, necessitating surgery, which again rendered him disabled under the terms of the policy.  In the Ninth Circuit's analysis, the Court clearly erred by not viewing the time period between the end of January 2020 and March 10, 2020 as a continuous period of disability.

On remand, without further briefing from the parties, this Court took the matter under submission.  (ECF 86.)  The Court reevaluated the evidence of record as instructed by the Ninth Circuit.  (*See* ECF 89 (Order on Remand from Ninth Circuit ("Order on Remand")).)  Therein, the Court concluded that Plaintiff continued to be disabled even after the end of a reasonable recovery period following his March 2020 cardiac surgery.  Looking to the date of Sun Life's denial of Plaintiff's administrative appeal, the Court awarded benefits through the date of that denial, but remanded to the claims administrator to make a benefits determination for time periods after February 22, 2021.

The matter now stands submitted before the Court on Plaintiff's post-judgment motion seeking attorneys' fees and costs of suit.

## II.    LEGAL STANDARDS FOR AWARDING ATTORNEYS' FEES

ERISA provides the Court discretion to award fees to a party who achieves success in litigation: "In any action under this subchapter . . . by a participant, beneficiary, or fiduciary the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."  29 U.S.C. § 1132(g)(1).

Plaintiffs are generally awarded fees and costs where they show "some degree of success on the merits."  *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 244 (2010) (quotation marks omitted).  Determining whether a plaintiff is entitled to an award of fees

2

in an ERISA case typically involves the application of a five-factor test from *Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir. 1980). *See Simonia v. Glendale Nissan/Infiniti Disability Plan*, 608 F.3d 1118, 1122 (9th Cir. 2010) (applying factors). That is, courts must consider:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

*Hummell*, 634 F.2d at 453.

Where a party is entitled to fees, those fees are calculated via a two-step "hybrid lodestar/multiplier" approach. *McElwaine v. US West, Inc.*, 176 F.3d 1167, 1173 (9th Cir. 1999). First, courts determine a lodestar amount by multiplying the "number of hours reasonably expended by the attorney(s) on the litigation by a reasonable hourly rate[.]" *Id.* Second, courts may adjust the lodestar upward or downward according to factors identified by the relevant circuit court. *Id.* This lodestar amount is the "presumptively reasonable fee amount" and adjustments are warranted only where they are supported by specific evidence and detailed findings that the lodestar amount is unreasonably low or unreasonably high. *Van Gerwen v. Guarantee Mutual Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000).

The party moving for an award of fees has the burden of proving both the reasonableness of the hourly rates charged and the reasonableness of the number of hours worked on the matter. *See Intel Corp. v. Terabyte Int'l*, 6 F.3d 614, 622-23 (9th Cir. 1983). If the moving party satisfies this burden, the resulting lodestar is presumed to be the reasonable fee. *Id.* "The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its

submitted affidavits." *Gates v. Gomez*, 60 F.3d 525, 534-35 (9th Cir. 1995) (quotation marks omitted).

In cases involving "voluminous billing records," the Ninth Circuit has endorsed an approach that allows district courts to apply "across-the-board percentage cuts" to the amount of fees sought based on the billing records of counsel for the prevailing party. *See Gonzalez v. City of Maywood*, 729 F.3d 1196, 1203 (9th Cir. 2013); *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008); *Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992). "Haircuts" to the billing amount of up to 10% do not require explanation, but any greater percentage reductions by district courts must be accompanied by "'a concise but clear explanation of its reasons for choosing a given percentage reduction.'" *Gonzalez*, 729 F.3d at 1203 (quoting *Gates*, 987 F.2d at 1400).

## III.  ENTITLEMENT TO FEES:  APPLICATION OF THE *HUMMELL* FACTORS

Applying the *Hummell* factors, the Court determines that Plaintiff is entitled to an award of fees. As to the first factor, the Court determines no high degree of culpability or bad faith on Sun Life's part, but Plaintiff prevailed against Sun Life, so the litigation position maintained by Sun Life was rejected. Additionally, at least one characteristic of Sun Life's claim review shows a modicum of culpability. Specifically, in the initial Order awarding benefits, the Court discussed at length the failure of the administrator to consider the combination of Plaintiff's cardiac condition and work-related stress on his ability to work. (*See* Order awarding benefits at 13-16.) Sun Life's file reviewers and examining physician consistently ignored and/or dismissed any concern raised by this combination.[1] As discussed by the Court, the evidence of record in this specific case and (case law generally) establish that a combination of cardiac symptoms and work-related stress can (and in this case did) combine to create a disabling condition. (*See id.* at 16 ("In much the

---

[1] In the present case, Sun Life's failure to account for this combination may have had a cascade effect: This initial failure led to the failure to consider later time periods when, as the Court's Order on Remand easily concluded, Plaintiff was disabled due to his spinal issues.

same way that returning to a job requiring heavy lifting may cause unacceptable strain on a patient with a recent back or leg injury, returning to a high stress job may cause unacceptable strain on a cardiac patient.").)

Sun Life argues against this factor by focusing on the disagreement by the Ninth Circuit with this Court's conclusion, noting that "reasonable minds differed" and therefore there could be no bad faith. (Opp. at 4-5.) But in the Ninth Circuit's view, this Court "clearly erred" in concluding that Plaintiff "was no longer disabled as of January 29, 2020." (Mem. Disp. at 2.) Therefore, Sun Life's point is, as a general matter, unpersuasive. The first *Hummell* factor weighs in favor of an award of fees.

The second factor, Sun Life's ability to satisfy an award of fees, is not in dispute and also weighs in favor of an award of fees.

As to the third factor, the deterrent effect of an award of fees in this instance is self-evident. Although the Court does not award the full amount of fees sought, the Court makes a substantial fee award that is reasonable based on the extent to which this case was litigated. This factor also weighs in favor of an award of fees.

Because this is a participant's claim for benefits under a policy for long-term disability benefits, there is no benefit to any party other than Plaintiff himself, so the fourth factor does not weigh in favor of an award of fees.

And finally, the fifth factor, the relative merits, also weighs in favor of an award of fees. Plaintiff is unequivocally the prevailing party because he established his entitlement to long-term disability benefits by partially prevailing before this Court, successfully appealing this Court's Order awarding limited benefits, and by prevailing on remand as to all time periods for which the medical evidence of record was complete. (*See* Order on Remand at 14.)

Thus, four of the five *Hummell* factors weigh in favor of an award of fees. The remaining factor does not weigh in favor of fees based only on the nature of the present

case as asserting an individual claim. Therefore, the Court determines that an award of fees is appropriate in this case.

## IV.  FEES SOUGHT

Plaintiff seeks an award of fees totaling $624,545.00 based upon hourly rates of his counsel and on their time records in this case. In tabular format, a summary of the fees sought may be expressed as follows:

| TIMEKEEPER | HOURLY RATE | HOURS EXPENDED | TOTAL FEE |
|---|---|---|---|
| **HORROW** | $ 800.00 | 166.10 | $ 132,880.00 |
| **CALVERT** | $ 800.00 | 171.70 | $ 137,360.00 |
| **PETTI** | $ 700.00 | 22.80 | $ 15,960.00 |
|  | $ 750.00 | 423.50 | $ 317,625.00 |
|  |  | **TOTAL BEFORE REPLY BRIEF:** | $ 603,825.00 |
| **HORROW (REPLY BRIEF)** | $ 800.00 | 4.40 | $ 3,520.00 |
| **CALVERT (REPLY BRIEF)** | $ 800.00 | 21.50 | $ 17,200.00 |
|  | **TOTAL HOURS EXPENDED:** | 810.00 |  |
|  |  | **TOTAL FEES REPLY BRIEF:** | $ 20,720.00 |
|  |  | **GRAND TOTAL FEES SOUGHT:** | $ 624,545.00 |

## V.  CALCULATION OF A REASONABLE FEE AWARD

The presumptively reasonable lodestar is based on a reasonable hourly rate for time reasonably expended. Counsel's hourly rates are reasonable. Each of the three lawyers on the case has a very high level of experience in insurance litigation generally and in ERISA litigation specifically. These lawyers command correspondingly high hourly rates. However, the time expended by counsel is not reasonable, and, for the reasons and in the

manner set forth below, the Court calculates the lodestar figure at 15% lower than the award sought by Plaintiff.

### A. The Hourly Rates Sought Are Reasonable for Highly Experienced ERISA Attorneys

#### 1. Attorneys Horrow and Calvert

Attorneys Horrow and Calvert each billed an hourly rate of $800 in this case. (*See* ECF 100-1 (Horrow Decl.); ECF 100-2 (Calvert Decl.).) Their experience is detailed at length in their Declarations. Around the time this case was filed, Attorney Horrow had almost three decades of experience, and over twenty years of that has been spent almost exclusively on insurance litigation including, to date, over 850 ERISA cases involving claims for disability benefits. (*See* Horrow Decl. ¶¶ 4-11.) Attorney Calvert had a similar amount of experience in representing ERISA participants and is co-author of a chapter on Group Life and Disability Insurance in a leading treatise on California Insurance law. (*See* Calvert Decl. ¶¶ 3-8.)

The current hourly rate of $800 charged by Attorneys Horrow and Calvert (beginning January 1, 2021) was approved by the Northern District of California in an ERISA claim-for-benefits case. (Horrow Decl. Ex. D at 5.) This rate was affirmed on appeal. *See Connor v. Unum Life Ins. Co.*, No. 21-16246 (9th Cir., Jan. 26, 2023) (ECF 43-1). In *Conner*, the Ninth Circuit affirmed the pair's hourly rate of $800 per hour as supported by "declarations from other practitioners in the relevant market" attesting "to hourly rates paid to local attorneys in ERISA cases." (*Id.* at 6.) Attorneys Horrow and Calvert have supported their hourly rate in a similar manner here. (*See, e.g.,* Kantor Decl. ¶¶ 7-8 & 10-13.) Therefore, the Court finds that for Attorneys Horrow and Calvert, for the years 2021 through 2024, a rate of $800 is a reasonable hourly rate in the Central District of California.

##### 2. Attorney Petti

Attorney Petti seeks fees at an hourly rate of $700 for 2021 and $750 for 2022. (ECF 100-3 (Petti Decl. ¶ 2).) At the time of the filing of this case, Attorney Petti had approximately five years' experience as a federal prosecutor and twenty-five years in private practice. (*Id.* ¶¶ 5-7.) Attorney Petti's practice is not as ERISA- and insurance-focused as are the practices of Attorneys Horrow and Calvert, but he has substantial experience with ERISA cases, having handled, by his estimation, over 250 such cases. (*Id.* ¶¶ 5-11.) In December 2021, this Court awarded Attorney Petti the lower rate he seeks, $700 per hour. (*Id.* Ex. R.) This rate has been unchanged since 2018, and he has supported the $50 per hour increase he seeks as of January 1, 2022. On the evidence of record, including that cited above regarding Attorneys Horrow and Calvert, the Court finds that Attorney Petti's hourly rates of $700 an hour and $750 an hour are reasonable hourly rates.

#### B. Reasonableness of Hours Expended

Although the Court finds that the hourly rates sought are reasonable, the same cannot be said as to all the hours expended. Therefore, the Court makes an award of $530,863.25. It does so based upon the following observations.

Counsel's hourly rate in this case is justified, in part, based on their particularized expertise in the law regarding ERISA claims for benefits, their expertise in developing a factual record to support such claims, and their ability to present such claims efficiently. Collectively these counsel have, by their own estimation, handled well over a thousand similar cases over their combined decades of experience.

The present case is not legally complex. And although Plaintiff's medical records are lengthy and detailed, with medical professionals disagreeing regarding Plaintiff's ability to work, as these cases go, the present case is not *unusually* factually complex in comparison to other ERISA-claim-for-benefits cases over which the Court has presided. To be sure, to prepare this case, the parties were required to cull a massive record to its relevant portions in order to present a comprehensive and coherent analysis of how the

8

medical evidence supported Plaintiff's claim and why Sun Life's claims analysis was in error. But analysis and organization of such evidence falls squarely into the specific area of expertise of all three experienced ERISA attorneys staffing this case.

On that note, the Court believes that the involvement of three attorneys did not increase efficiency but instead reduced the efficiency of handling this case. On this point, the Supreme Court has observed:

> Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. In the private sector, "billing judgment" is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority.

*Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) (cleaned up); *cf. Moreno v. City of Sacramento*, 534 F.3d 1106, 1112-13 (9th Cir. 2008) (discussing how "unnecessarily duplicative" time expended is by its nature difficult to discern).

Plaintiff's counsel advocate the Court paying heed to what is described as "a growing trend" to "award fees based on an overall global understanding and review of a case, rather than on a tedious review of time entries and hourly rates." (Reply at 12 (citing *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 130 F. Supp. 3d 1331, 1334 (C.D. Cal. 2015), *aff'd without op.*, 669 F. App'x 575 (Fed. Cir. 2016).) The Court agrees that this is the growing trend, one which generally allows district courts to forego line-by-line analysis of counsel's billing records in favor of, where appropriate, "across-the-board percentage cuts" supported by the district courts' explanation for choosing a given percentage where that percentage is greater than 10 percent. *Moreno*, 534 F.3d at 1112.

With these considerations in mind, the Court turns to its discussion of the reasonableness of the time expended by counsel. Against the background of the Court's experience with the present case, and after review of the parties' briefing, and their

declarations and evidence, including Plaintiff's counsel's billing records, the Court is left with the impression that a 15% "haircut" is appropriate in this case. In making this determination, the Court has considered three specific examples of categories of counsel's time records.

First is a minor point in terms of the relative amount of fees billed, but it is an important example of billing judgment. Handled almost exclusively by Attorney Horrow, counsel expended 44.2 hours communicating directly with their client, resulting in fees of approximately $35,360 (at an $800 hourly rate). There is no doubt that the present case was important to Plaintiff, given its influence on his and his family's financial well-being. (*See* Mot. at 11-12 & Horrow Decl. ¶ 34 (characterizing communications with clients as "one of the more time-consuming tasks when representing claimants").) And although counsel avers that Plaintiff wanted to be updated on the details of his case, it is simply not reasonable to believe that an individual client seeking the services of an attorney to pursue a claim for what is essentially lost wages would be willing to pay Attorney Horrow's hourly rate for the number of hours billed in order to be kept updated on the details of his case to the extent reflected by counsel's billing statements in this case. This is all the more true in light of the fact that the benefits at issue amounted to just under $50,000 annually. (*See* Opp. at 2 n.2.) This point brings into sharp focus the admonition in *Hensley* that excessive billing entries "are not properly billed to one's adversary pursuant to statutory authority" to the same extent they are not properly billed to one's client. *Hensley*, 461 U.S. at 434. The Court agrees that communications between attorneys and clients are important, but the client communication over the course of the present litigation is excessive and unreasonable, and the Court has no doubt could not be properly billed to Plaintiff. If the Court were deducting in this category alone, a much greater than 15% reduction would be appropriate. Instead, the Court simply highlights this as an obvious example of excessive billing, from which the Court can infer that in other areas less susceptible to scrutiny, counsel may not have exercised reasonable billing judgment.

Next, the Court considers two broad categories of fees that resulted in just over 600 of the 810 hours expended by counsel. These two categories are ones that the Court is particularly well-suited to thoroughly evaluating. In this manner, the Court's selection is meant to address the concern the *Moreno* court expressed about the difficulty of ascertaining reasonableness in the face of duplicative tasks that may or may not be *unnecessarily* duplicative. These two broad categories are (1) tasks related almost exclusively to the core litigation of Plaintiff's claim on the merits, and (2) tasks associated with the attorney fee motions. The Court has reviewed the products of these tasks thoroughly over time, beginning with Plaintiff's first filings. The Court is therefore uniquely qualified to determine the reasonableness of the time billed to produce counsel's work product. The Court's familiarity with the record makes these categories the most amenable to its scrutiny for reasonableness. Moreover, the Court has had the benefit of examining the reasonableness of fees sought in other, similar cases, which it applies here.

The first category includes billings associated with the review of litigation-related documents (including the record, opposing counsel's briefs and exhibits, and court orders (225.1 hours)), drafting of filings (appellate filings, mediation briefs, trial briefs, and settlement agreement (197 hours)), and research (39.7 hours).[2]  (*See* ECF 103 at 21-22, Opp. at 15-16; ECF 103-2 (Nalty Decl.).) These billing sub-categories of hours represent the core of counsel's attempt to secure victory for their client on the merits of his claim; they total 461.8 hours of attorney time or $352,115. These entries include those made for the successful appeal of this Court's Order awarding benefits (ECF 58), but does not

---

[2] For these categorization of hours, the Court relies on the declaration and representations of defense counsel which, in turn, relies upon the accounting analysis set forth at length in the Smith Declaration. (ECF 103-1.) Plaintiff's counsel does not criticize the reliability of the accountant's categorization and analyses, set forth in 94 pages of spreadsheets, calling it "nit pick[ing]" (ECF 104 at 6); instead, counsel point to the "growing trend" away from a "tedious review of voluminous time entries" and toward awards based upon "an overall global understanding and review of a case." (ECF 104 at 16-17, Reply at 11-12).

include any briefing on remand, which the Court directed counsel to refrain from filing unless specifically ordered by the Court. (*See* ECF 86).

The second category, which took the second greatest amount of time, and one that the Court is also in a good position to scrutinize, includes billing related to the attorney fee motions. The Court denied without prejudice Plaintiff's counsel's pre-appeal attorney fee motion. With its post-remand updating and refiling, much of that motion (and accompanying declarations and exhibits) was (appropriately) reused and recycled into the present motion. (*See* ECF 103-2 at 277-551, Exs. 6-9 to the Nalty Decl. (defense counsel's comparison of the pre-appeal motion with the present one with the recycled portions highlighted and the "new" portions displayed in non-highlighted text).) In total, preparing and supporting these attorney fee motions, counsel expended a total of 109.8 hours when one includes those hours related to the preparation and filing of the Reply brief filed in support of the present Motion. (*See* ECF 103 at 19-20, Opp. at 13-14 (83.9 hours); ECF 104-1, Supp. Calvert Decl. (25.9 hours expended on preparing the Reply brief in support of the present motion).)

These observations factor into the Court's determination that an overall reduction to the fee award sought is appropriate. In large part, the Court's determination is based on the Court's approval of a premium hourly rate for three experienced ERISA counsel, which necessarily carries with it the presumed ability to leverage that experience to rely upon litigation of past cases as a starting point for drafting and analysis of the present one. While the Court would expect that less experienced counsel may expend something close to the amount of time spent by these three attorneys, it would come at a lower hourly rate. The Court also considers the other ERISA-claims-for-benefits cases litigated before it and the fee awards in those cases. In assessing the reasonableness of the time expended, the Court is mindful that litigation of Plaintiff's claim—while *legally* straightforward and litigated by experienced ERISA attorneys—was *factually* complex given the size of the record, the disagreement among medical professionals as to the extent of Plaintiff's ability

(or inability) to work, the number of medical professionals, and the multiple physical and mental conditions contributing to Plaintiff's disability as defined by the relevant policy.

Therefore, having discussed these three more easily scrutinized categories, the Court extrapolates from its examination and determines that an overall reduction of 15% would reflect the "presumptively reasonable lodestar" figure in this case. Applying that reduction, the Court awards $530,863.25 in attorneys' fees.[3]

## VI. COSTS

Plaintiff also seeks an award of costs. ERISA provides that the Court may allow "reasonable . . . costs of action." 29 U.S.C. § 1132(g)(1). Generally costs are limited to those set forth in 28 U.S.C. § 1920, but in ERISA cases, the Ninth Circuit allows for additional items, beyond those set forth in § 1920, to be awarded where there is a "prevailing practice in a given community for lawyers to bill . . . costs separately from their hourly rates" even if the court cannot tax those expenses as "costs" under § 1920. *Trustees of Const. Industry and Laborers Health and Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253 (9th Cir. 2006); *Harlow v. Metro. Life Ins. Co.*, 379 F. Supp. 3d 1046, 1060-61 (C.D. Cal. 2019).

Although originally seeking $9,170.28 in costs, Plaintiff withdrew his request for $3,959.30 of that amount, which was related to subpoena fees. Sun Life makes two other limited challenges, but they lack merit. Although noted to be "filing fees," the invoiced costs from "Rapid Legal" are associated with service of the summonses and complaint. (*See* ECF 10-11 ($75 and $155 for service of process on proofs of service); *cf.* ECF 101-1 at 125 (Horrow Decl. Ex. F at 1) (billing these same two amounts).) And the per-page photocopy charge of $.20 is in line with other standard black-and-white photocopying charges submitted to the Clerk on Bills of Cost in accordance with Local Rule 54. Therefore, the Court awards $5,210.98 in costs.

---

[3] The total amount sought, $624,545, multiplied by .85, equals $530,863.25.

## VII. CONCLUSION

As set forth herein, the Court GRANTS IN PART Plaintiff's Motion for Attorneys' Fees and Costs and AWARDS $530,863.25 in attorneys' fees and $5,210.98 in costs.

**IT IS SO ORDERED.**

DATED: November 20, 2024

HON. JOSEPHINE L. STATON
United States District Judge